**UNITED STATES**

v.

**Staff Sergeant Eugene J. LETT, FR 168–40–5914 United States Air Force.**

**ACM 22557.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 2 June 1979.

Decided 28 April 1980.

Appellate Counsel for the Accused: Colonel Larry G. Stephens, Major Wade B. Morrison and Captain Patrick A. Tucker.

Appellate Counsel for the United States: Colonel James P. Porter and Major Robert T. Mounts.

Before HERMAN, ARROWOOD and MILES, Appellate Military Judges.

## DECISION

ARROWOOD, Judge:

The accused was charged with murder in violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918. After instructions by the military judge as to the elements of that offense, lesser included offenses raised by the evidence, and the issue of self-defense, the court returned a finding of guilty of voluntary manslaughter, in violation of Article 119, 10 U.S.C. § 919. He was sentenced to a dishonorable discharge, confinement at hard labor for ten years, forfeiture of $250.00 per month for ten years and reduction to airman basic.

Appellate defense counsel contend that accused's testimony that he used a switch-blade knife only as a passive deterrent to the fistic assault and that victim's death resulted from the victim grabbing his arms and struggling for the knife raised the issue of accident as a defense and required a specific instruction. We do not agree.

The evidence showed that on the evening of his death, the victim went to the Noncommissioned Officers Club at Grissom Air Force Base, Indiana. There he met several friends and began drinking. Later in the evening, his wife and her girl friend entered the Club, but sat at a different table than the victim. They were soon joined by the accused who had worked with the victim for several years and had been a close friend of his entire family. The victim became upset and agitated over what he believed to be an improper relationship between his wife and the accused and indicated to several individuals in the Club that he was going to "kick his ass." On one occasion the victim danced with his wife and upon leaving the table told the accused,

"I'm going to dance with her, all you can do is watch."

Later, the victim approached the table a second time. What happened between the accused and the victim from that point on is in dispute, for no one saw the incident from the same vantage point. For the most part, the witnesses saw the victim push the table toward the accused and the accused hold the knife in front of him. One witness who was seated at the next table testified the victim's hands were on the table when the accused thrust the knife at about chest level toward the victim's left side and withdrew it in the same manner.

The accused testified that when the victim approached the second time he spoke to an individual at the next table, then turned toward the accused and said, "Did I say anything to you?" The accused replied, "I didn't say anything." The victim then said, "Mind your own business." The accused stated he then got up to leave but the victim began to push the table toward him, pinning him against the wall. As he pushed the table he told the accused, "I'm going to kick your ass." The accused tried to get out from behind the table but was unable to. He then took his knife from his pocket, unlocked it, and pushed the button which snapped it open. He told the victim to "back off, I don't want no hassle, just leave me alone," but the victim grabbed his wrist and told him he would make him "eat that knife." Both of them were pushing and struggling with the knife. This continued for several seconds until someone grabbed the victim and pulled him away. The accused closed the knife, returned it to his pocket, and left the room.

The witnesses then observed the victim turn and pick up a chair which was taken from him by a friend who had pulled him away from the accused. As he started to lift a second chair he slumped over, dying from a stab wound which penetrated both his heart and liver.

■ The Manual for Courts-Martial, 1969 (Rev.), paragraph 216*b*, provides that "[a] death . . . which occurs as the result of an accident or misadventure in doing a lawful act in a lawful manner is excusable." To be excusable as an accident the killing must not be intentional and the act resulting in death must be lawful and done with reasonable care and due regard for the lives and person of others. In short, the act must have been the result of doing a lawful act in a lawful manner, free of negligence. *United States v. Redding*, 14 U.S.C.M.A. 242, 34 C.M.R. 22 (1963); *United States v. Sandoval*, 4 U.S.C.M.A. 61, 15 C.M.R. 61 (1954); *United States v. Rodriguez*, 8 M.J. 648 (A.F.C.M.R.1979).

■ An accused need not fear death or serious injury in order to legally repel a simple fistic assault by force of similar nature and where such legitimate response results in death, no criminality attaches. *United States v. Weems*, 3 U.S.C.M.A. 469, 13 C.M.R. 25 (1953). Such permissible self-defense against an ordinary assault would constitute a lawful act done in a lawful manner. An unintended and unanticipated death resulting therefrom is an accident under the meaning of MCM, 1969 (Rev.), paragraph 216*b*, and is excusable. *United States v. Perry*, 16 U.S.C.M.A. 221, 36 C.M.R. 377 (1966).

■ Neither is it necessary for an accused to fear death or grievous bodily harm, if, for the purpose of frightening his assailant, he *threatens* to resort to more force than he may permissibly, under the law, actually employ in self-defense. *United States v. Acosta-Vargas*, 13 U.S.C.M.A. 388, 32 C.M.R. 388 (1962); *United States v. Johnson*, 25 C.M.R. 554 (A.C.M.R.1958). Thus, an accused might resort to the use of a dangerous weapon as a deterrent but he may not actually commit a return assault by using it aggressively so that his assailant reasonably fears he will immediately be seriously injured or killed by it. *United States v. Acosta-Vargas, supra.* If an accused who is not in fear of death or grievous bodily harm uses such a dangerous weapon and in a manner free from negligence, and the assailant is subsequently injured by the weapon, such as by impaling himself on a drawn knife, the accused is

entitled to rely on accident as a defense. *United States v. Lincoln*, 17 U.S.C.M.A. 330, 38 C.M.R. 128 (1967). When the evidence is such that the defense of accident is raised, the defense is entitled to an instruction on that theory of the case. *United States v. Tucker*, 17 U.S.C.M.A. 551, 38 C.M.R. 349 (1968); *United States v. Sandoval, supra.*

▉ In the case at hand we do not find any facts which reasonably raised the issue of misadventure or accident. Under the circumstances of this case the accused's actions were unlawful and were done without reasonable care and due regard for the lives of others. Carrying a concealed switchblade knife with a five inch blade into a crowded club with the express purpose of using it as a weapon is conduct prejudicial to good order and discipline of the armed forces. Article 134, 10 U.S.C. § 934, Code, *supra; United States v. Bluel*, 10 U.S.C.M.A. 67, 27 C.M.R. 141 (1958); *United States v. Thompson*, 3 U.S.C.M.A. 620, 14 C.M.R. 38 (1954). Although this unlawful act was not the direct cause of the offense charged, it facilitated it by providing the weapon at the time and in a location where it would not be normally expected. See *United States v. Sandoval, supra.* We recognize an accused's right to show a weapon as a passive deterrent in order to ward off an assailant even in a fistic assault. However, when as here, the weapon was drawn by the accused in such close proximity to the assailant that the assailant would reasonably surmise it was to be immediately used against him, it cannot be considered as a passive deterrent, but a resort to inordinate force.

Even if we accept the accused's version of the incident that the victim grabbed his arms and stabbed himself in the ensuing struggle, such actions by the victim were reasonably foreseeable and should have been anticipated by the accused when he produced the weapon. Such conduct cannot be considered acts done with reasonable care and due regard for the life of the victim. *United States v. Redding, supra.* Since there is no evidence that would permit the court to reasonably find the accused was doing a lawful act in a lawful manner, free of negligence, the defense of accident was not reasonably raised and no instruction thereon was required. *United States v. Sandoval, supra.*

The remaining issues raised by the accused are without merit. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

HERMAN, Senior Judge, concurs.

MILES, Judge, dissenting:

I agree that the defense of accident or misadventure was not reasonably raised by the evidence and thus the accused was not entitled to an instruction thereon. The accused's carrying the switch blade knife into the club, and drawing it when the victim confronted him, were deliberate acts, a foreseeable consequence of which might be death or injury of patrons of the club. *United States v. Fammer*, 14 U.S.C.M.A. 358, 34 C.M.R. 138 (1963). But at most, the accused under these circumstances would be guilty of involuntary manslaughter, a significantly different offense from that for which he was convicted.

In my view, the defense was entitled to meaningful instructions on their theory of the case, namely that the stabbing of the victim was unintentional. Therefore, the problem arises as to whether the court's instructions on lesser included offenses were adequate for this purpose. As the United States Court of Military Appeals has stated:

> The trial judge is more than a mere referee, and as such he is required to assure that the accused receives a fair trial. Advocacy leaves the proceedings at the juncture of instructing the court members. Irrespective of the desires of counsel, the military judge must bear the primary responsibility for assuring that the jury properly is instructed on the elements of the offenses raised by the evidence as well as potential defenses and other questions of law. Simply stated, counsel do not frame issues for the jury; that is the duty of the military judge based upon his evaluation of the testimony related by the witnesses during the trial.

*United States v. Graves*, 1 M.J. 50, 53 (C.M. A.1975).

In this case, I am not persuaded that the instructions on involuntary manslaughter and negligent homicide were adequate in view of the defense theory that the stabbing was unintentional, supported by the accused's testimony, and in the face of a specific request for an accident instruction.[*] Accordingly, I would order a rehearing.

---

[*] *United States v. Tucker*, 17 U.S.C.M.A. 51, 38 C.M.R. 349 (1968).