**UNITED STATES, Appellee,**

v.

**Specialist Derrick A. BRADFORD, 133–50–9164, United States Army, Appellant.**

**ACMR 8702438.**

U.S. Army Court of Military Review.

29 Nov. 1989.

For appellant: Captain Jeffery J. Fleming, JAGC (argued); Captain Thomas A. Sieg, JAGC (on brief).

For appellee: Captain Timothy J. Saviano, JAGC (argued); Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Martin D. Carpenter, JAGC (on brief).

Before MYERS, JOHNSON, and NEURAUTER, Appellate Military Judges.

## OPINION OF THE COURT
## ON REMAND

MYERS, Senior Judge:

Contrary to his pleas, appellant was convicted by a general court-martial composed of officer members of violation of a lawful general regulation (possession of a switchblade knife) and aggravated assault with intentional infliction of grievous bodily harm in violation of Articles 92 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 928 (1982) [hereinafter UCMJ], respectively. The court sentenced appellant to a bad-conduct discharge and confinement for nine months. The convening authority approved the adjudged sentence.

On 6 May 1988, the issues in this case were joined before this court. The case was initially submitted on its merits with appellant personally raising issues of sufficiency of the evidence and sentence appropriateness pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982). This court affirmed the findings of guilty and the sentence. *United States v. Bradford*, ACMR 8702438 (A.C.M.R. 10 May 1988) (unpub.). On 15 December 1988 the Court of Military Appeals (court) issued an order granting appellant's petition for grant of review on the following two issues specified by the court:

### I

WHETHER THE EVIDENCE IS SUFFICIENT AS A MATTER OF LAW TO REBUT THE DEFENSE OF SELF–DEFENSE.

### II

WHETHER APPELLANT RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL IN HIS POST–TRIAL REPRESENTATION.

*United States v. Bradford*, 27 M.J. 474 (C.M.A.1988).

Upon motion by appellate defense counsel, the court amended the second specified issue in an interlocutory order as follows:

WHETHER APPELLANT RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL IN HIS POST–TRIAL REPRESEN-TATION UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE BECAUSE APPELLATE DEFENSE COUNSEL NEITHER BRIEFED ANY ISSUES NOR PRESENTED AN ARGUMENT ON THE APPROPRIATENESS OF THE SENTENCE BEFORE THE COURT OF MILITARY REVIEW.

*United States v. Bradford*, 28 M.J. 90, 91 (C.M.A.1989).

On 18 May 1989 the court found "that appellate defense counsel did not fail in their duty to provide effective representation," and granted appellant's motion, unopposed by the Government, to remand the case to this court for further proceedings. *United States v. Bradford*, 28 M.J. 125, 126 (C.M.A.1989).

Appellate defense counsel now allege two errors before this court: first, that the evidence adduced at trial was insufficient to rebut his claim of self-defense; and second, that the military judge erred by failing to instruct on the complete defense of self-defense. We find consideration of the first issue unnecessary in light of our disposition of the latter.

On the night of 3 February 1987 appellant and two friends, Privates First Class (PFC) S. and E., went to a nightclub in Mainz, Germany. As they sat at the bar Specialist (SPC) R., the victim in the case, came up to them and began "shadow boxing" with appellant, that is, throwing simulated punches at and around appellant. While doing this, SPC R. said something to the effect that he was "a USAREUR champion boxer." Appellant ignored SPC R. and the latter eventually lost interest and departed. Sometime later SPC R. returned and again went through his shadow boxing routine with appellant. SPC R. told appellant that they could step outside and fight, to which appellant agreed. Appellant departed as if to go outside, but returned shortly thereafter stating that he really did not want to fight.

Approximately an hour later PFC E. asked appellant to hold his switchblade knife for him because it kept opening in his pocket as he "breakdanced." Appellant

agreed, took the knife from PFC E., and put it in his own pocket. After dancing for a while, PFC E. went to the men's room. SPC R. came into the room, began harassing PFC E., and struck PFC E. three times with his fists before PFC E. could escape from the restroom.

Back inside the bar, appellant asked PFC E. how he had bloodied his nose. PFC E. told appellant about the attack by SPC R., after which they decided to leave. PFC E. went to get his coat and find a taxi to take them back to post while appellant went back into the main part of the bar to say goodbye to PFC S. As appellant wound his way through the bar, he encountered SPC R. and asked him "Why did you beat up my friend?" SPC R. asked appellant "Do you want some of me?" and immediately hit appellant in the face with his fist, knocking appellant backward two or three steps. ·

PFC S. testified that at this point appellant reached into his pocket, took out the switchblade, clicked it open, and held it down at the side of his leg with the blade pointing toward the floor. Appellant testified, however, that as SPC R. came at him he brandished the knife in front of him to deter SPC R. from attacking him further. Either way, SPC R. was undeterred and the two advanced on each other, grappled,[1] and fell to the floor with SPC R. on top, continuing to hit appellant with his fists. After approximately half a minute, spectators pulled SPC R. off appellant. SPC R. struggled to continue to fight even though he had been stabbed during the melee and was bleeding. Appellant got up and promptly left the bar. Outside, he rejoined PFC E., who had by that time hailed a taxi, and the two of them returned to their kaserne. Appellant had blood on his clothes and was described as looking worried, but he did not tell PFC E. about the stabbing incident until they had arrived back at post. Appellant went to PFC E.'s room, changed into some exercise clothes borrowed from PFC E., and washed his own clothes to get the blood out. Meanwhile, SPC R. was taken

to the station hospital where he was treated for three stab wounds to the left side of his body. Two of the wounds were not serious but one was life-threatening, requiring three hours of emergency surgery.

At trial, evidence was adduced to the effect that SPC R. had been trained as a boxer and had participated on a local boxing team at one time, but reportedly had been suspended therefrom. SPC R. was described as six feet, two inches tall, had a heavy build, lifted weights, and would become very aggressive when drunk (as he was on the night in question). Appellant, on the other hand, was five feet nine inches tall, and weighed 162 pounds, had a reputation for peacefulness, had competed in wrestling while in high school, and had martial arts skills consisting only of defensive moves.

After opening statements, the military judge issued preliminary instructions in which he discussed self-defense and the right to display or threaten to use a deadly weapon as a deterrent to a reasonably perceived attack, in pertinent part as follows:

> There will be evidence in the case that the accused displayed or brandished the weapon solely to defend himself by deterring Specialist [R.], rather than for the purpose of actually injuring Specialist [R.]. A person may, acting in self-defense, in order to frighten or discourage an assailant, threaten more force than he is legally allowed to actually use under the circumstances. An accused who reasonably fears an immediate attack is allowed to display or threaten the use of an ordinarily dangerous weapon even though the accused does not have a reasonable fear of serious harm, as long as he does not actually use the weapon or attempt to use it in a manner likely to produce grievous bodily harm.... The test here is whether, under the same facts and circumstances, a reasonable [sic] prudent adult male, faced with the same situation, would have believed that there were grounds to anticipate immedi-

1. One witness testified that before they grappled, appellant motioned to SPC R. and said, "Come on. Let's go."

ate physical harm. Second, the accused must have intended to use, and must in fact have used, the weapon only as a deterrent and not in a manner likely to produce death or grievous bodily harm. (R. 28–29).

In his final instruction on findings, the military judge repeated this instruction and, as requested by the defense, instructed also on the defense of accident and how that related to the issue of self-defense. The appellant had no objections to the instructions as issued and asked for no additional instructions.

■ The military judge is obliged to instruct the court-martial, *inter alia*, on the elements of each offense charged, the elements of lesser included offenses in issue, any special defenses under Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial [hereinafter R.C.M.] 916 in issue, and "[s]uch other explanations, descriptions, or directions as may be necessary and which are properly requested by a party or which the military judge determines, *sua sponte*, should be given." R.C.M. 920(e). The instructional duty of the military judge does not end there, however. It is now well settled that the military judge must instruct, *sua sponte*, on special, formerly known as affirmative, defenses reasonably raised by the evidence. *United States v. Taylor*, 26 M.J. 127 (C.M.A.1988); *United States v. Jackson*, 12 M.J. 163 (C.M.A.1981); *United States v. Steinruck*, 11 M.J. 322 (C.M.A.1981); *United States v. Stewart*, 43 C.M.R. 140 (C.M.A. 1971). This duty to instruct exists regardless of defense theories or requests, *Steinruck*, 11 M.J. at 324; *United States v. Gaiter*, 1 M.J. 54 (C.M.A.1975), and is not waived by defense failure to request such instructions. *Taylor*, 26 M.J. at 127; *United States v. Jones*, 3 M.J. 279 (C.M.A.1977); *United States v. Johnson*, 25 M.J. 691 (A.C.M.R.1987).

Irrespective of the desires of counsel, the military judge must bear the primary responsibility for assuring that the jury properly is instructed on the elements of the offenses raised by the evidence as well as potential defenses and other questions of law.

*United States v. Graves*, 1 M.J. 50, 53 (C.M.A.1975).

■ A defense is reasonably raised when "the record contains some evidence to which the military jury may attach credit if it so desires." *United States v. Simmelkjaer*, 40 C.M.R. 118, 122 (C.M.A.1969). *See also Graves*, 1 M.J. at 53.

It is not necessary that the evidence which raises an issue be compelling or convincing beyond a reasonable doubt. Instead, the instructional duty arises whenever "some evidence" is presented to which the fact finders might "attach credit if" they so desire.

*Jackson*, 12 M.J. at 166–67 (citations omitted). *See also Taylor*, 26 M.J. at 129. Thus, the testimony of the accused alone is sufficient to raise an issue requiring an instruction. *United States v. Wilson*, 26 M.J. 10 (C.M.A.1988); *United States v. McGee*, 1 M.J. 193 (C.M.A.1975); *Stewart*, 43 C.M.R. at 145; *United States v. Evans*, 38 C.M.R. 36 (C.M.A.1967). In fact, the accused himself need not actually testify in order to raise the issue. *United States v. Curtis*, 1 M.J. 297 (C.M.A.1976) (issue of self-defense reasonably raised by testimony of two prosecution witnesses and two pretrial statements of accused admitted into evidence by stipulation of the parties). Finally, "any doubt whether the evidence is sufficient to require an instruction should be resolved in favor of the accused." *Steinruck*, 11 M.J. at 324.

■ Turning now to the defense of self-defense, R.C.M. 916(e)(1) establishes two elements thereto, the first of which provides that an accused's apprehension that death or grievous bodily harm is about to be wrongfully inflicted on his person must be based on reasonable grounds. This objective test requires that the accused's apprehension of death or grievous bodily harm must be one which a reasonable, prudent person would have held under the circumstances.[2] Thus, objective in-

---

**2.** Generally, an accused is not entitled to use a    dangerous weapon in self-defense where the

dicators such as height, weight, and general build of the parties and the possibility of a safe retreat by the accused should be considered. Intoxication or emotional instability of the accused, however, should not. The second element establishes a subjective test which requires that the accused believe that the force he used was necessary for his protection against death or grievous bodily harm. Here, such considerations as an accused's emotional control, education, and intelligence are relevant in considering the accused's actual belief as to the amount of force necessary to repel the attack. *See also United States v. Ratliff,* 49 C.M.R. 775 (A.C.M.R.1975).

■ R.C.M. 916(e)(2) sets forth the same objective and subjective elements, but the subjective portion thereof addresses a situation where the accused, in order to deter the assailant, offered but did not in fact apply or attempt to apply a means or force likely to cause death or grievous bodily harm. This was the appellant's theory of self-defense and the military judge instructed thereon. As noted above, however, there was also evidence that appellant held the knife beside his leg with the blade pointing down toward the floor, motioned to SPC R. and said, "Come on. Let's go." Further, there is little doubt that SPC R. was in fact stabbed. Thus, the issue of actual infliction of grievous bodily harm in self-defense as defined in R.C.M. 916(e)(1) was also reasonably raised.

In *United States v. Thomas,* 11 M.J. 315 (C.M.A.1981), the accused, a security policeman, shot and killed an unarmed assailant during a scuffle. Although the defense requested an instruction on self-defense that dealt with the accused's drawing and use of his sidearm as a club, *i.e.,* less than deadly force, the military judge instructed only on self-defense by means of deadly force. *Id.* at 316. The court found that the evidence required both instructions to be issued. Because the instructions given by the military judge "failed to differentiate between the drawing of the weapon versus the use of deadly force; that is, the firing of the weapon," the court found the instructions to be deficient.[3] *Id.* at 317.

As in *Thomas,* both the infliction of and the offer to inflict grievous bodily harm in self-defense were in issue here and should have been instructed on by the military judge. Without such instructions, the court-martial could logically have concluded that since SPC R. was in fact stabbed, appellant obviously did more than merely brandish the knife to deter and was therefore not entitled to invoke the defense of self-defense.

> Absent appropriate instruction on this aspect of the accused's defense, the court members were unaware of it and without "lucid guideposts" by which they could "knowledgeably apply the law to the facts as they find them."

*Simmelkjaer,* 40 C.M.R. at 122 (citing *United States v. Smith,* 33 C.M.R. 3 (C.M.A.1963)). *But see Wilson,* 26 M.J. at 12 (military judge initially instructed on subjective standard, then later instructed on objective standard. Held: although second instruction was in error, it was nonprejudicial in absence of a specific defense objection).

We hold that both aspects of self-defense were reasonably raised by the evidence, that the military judge was required to instruct on both, notwithstanding defense theories or requests, and that his failure to do so constituted prejudicial error.

The findings of guilty and the sentence are set aside. A rehearing may be ordered

---

other party is unarmed and using only his fists. *United States v. Straub,* 30 C.M.R. 156 (C.M.A.1961). However, one who has been attacked is not necessarily restricted to the precise force threatened against him in defending himself. *United States v. Acosta–Vargas,* 32 C.M.R. 388 (C.M.A.1962). Here, the victim was a trained boxer, considerably larger than appellant, and was apparently a quarrelsome, mean-spirited bully when, as here, he had been drinking.

Such a potentially lethal combination could easily raise the apprehension of death or grievous bodily harm in any reasonable person.

3. Other instructions dealing with the accused's training in the use of his weapon and the effect of the immediate presence of others upon the defense were also found erroneous.

by the same or a different convening authority.

Judge JOHNSON and Judge NEURAUTER concur.