OPINION OF THE COURT
MERCK, Senior Judge:*
A military judge sitting as a general court-martial convicted appellant, in accordance with his pleas, of assault with a dangerous weapon (two specifications)[1] and obstruction of justice in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 934 [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for twenty months, forfeiture of all pay and allowances, and reduction to Private El. Pursuant to a pretrial agreement, the convening authority approved only six months of the sentence to confinement and otherwise approved the adjudged sentence.
The case is before this court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866. We have considered the record of trial, appellant’s assignments of error and the government’s response thereto. Appellant asserts, inter alia, that his pleas to aggravated assault were improvident “where appellant stated that at the time he used a weapon he was in fear of death or grievous bodily harm.” The government argues that the record does not raise a substantial basis in law or fact to question the providence of the pleas. We agree with appellant and will grant appropriate relief in our decretal paragraph.
Additionally, we specified the following issue to the parties:
WHETHER THE ACCUSED’S PLEA OF GUILTY TO OBSTRUCTION OF JUSTICE[2] WAS PROVIDENT WHERE THERE WAS NO INDICATION THAT APPELLANT’S DISPOSITION OF A KNIFE WHICH HE OWNED WAS WRONGFUL OR OTHERWISE UNLAWFUL. (citations omitted).
In light of our recent decision in United States v. Davis, 62 M.J. 691 (Army Ct.Crim. App.2006), we find that appellant’s plea of guilty to the offense of obstruction of justice was provident.
FACTS
Appellant testified under oath and by means of a stipulation of fact about the facts and circumstances of the offenses to which he pled guilty. He explained to the military judge that he was leaving an on-post club in the early morning hours on 24 August 2003. Appellant started backing his car out of the parking lot and heard “tapping” on the back of his car. He stopped the car and Sergeant (SGT) Raimer walked up to his window and told appellant that he had almost hit SGT Raimer with his ear. An argument ensued and SGT Raimer punched appellant through appellant’s open car window.
Appellant then took a pocket knife out of the console of his car and got out of the ear. He and SGT Raimer engaged in a fistfight. The two were eventually separated and the fighting stopped. The stipulation of fact states that after the fight was over, “the *620 accused elected not to leave the scene.” However, during his sworn testimony on sentencing, appellant said that after the first fight with SGT Raimer, he was returning to his car when Specialist (SPC) Lettsome, a bystander during the first fight, approached him.
Specialist Lettsome confronted appellant and accused him of hitting SPC Lettsome’s wife, who was one of the people who separated appellant and SGT Raimer. Specialist Lettsome then punched appellant in his face. The military judge asked appellant, “So then you and Specialist Lettsome start punching each other?” Appellant replied, ‘Tes, ma’am.”
Appellant said that when he and SPC Lett-some “got into it,” SGT Raimer and a third individual came over and began punching appellant. At that point, appellant said that he was “out numbered,” so he reached into his pocket and took out the pocket knife he had retrieved earlier. Appellant stated that he started making “thrusting motions forward at all three of them.” Sergeant Raimer then said, “I got stabbed, I got stabbed.”
The military judge and appellant had the following discussion:
MJ: Well did you stab him?
ACC: I assumed I did, ma’am, from my actions so I—
MJ: Well waving it trying to keep people back and actually stabbing somebody are kind of two different things. When do you think or when do you know that the stabbing occurred? I mean did you stab at him?
ACC: Yes, ma’am, I was stabbing towards all three of them guys, but—
MJ: Okay, so it sounds like they were awfully close to you?
ACC: Yes, ma’am.
MJ: What was your intent at the time?
ACC: To get them off of me, ma’am.
MJ: Okay, now it is possible that you had the right of self-defense to do that because one can offer more force than one can use under the circumstances. Now, did you stab them on purpose or was it accidental?
ACC: I say it was accidental but—
MJ: Well, I need to know—I need to hear from you what you believe happened and— because I want to make sure that you are really convinced that you’re guilty of an aggravated assault. So you just accidentally stabbed them trying to get them to get away from you?
Appellant never answered this question because the defense counsel interrupted and asked for time to speak with his client. The defense counsel stated, “We have actually discussed the defense with our client, Your Honor, and we’ve agreed that we didn’t feel that he had that defense but if we could have, a moment with my client.” The military judge said, “Okay. Would you because I really want to make sure that he just wasn’t offering more force than he could use, and then just because of—because of the other people advancing on him—... that it just wasn’t an accidental stabbing.” The parties then took a recess for approximately thirty minutes.
When the parties went back on the record, the military judge said:
We had a longer recess than we initially planned and I advised the counsel to read the United States versus Lett ... at nine Military Justice Reporter 602. An Air Force Court of Military [Rjeview case from 1980, which is to ensure that there is no remaining issue of self-defense in this case.
The defense has read the case law and so we talked about this amongst the two counsel and with the accused.
The military judge elicited assurances from both counsel that they did not believe the defense of self-defense or accident applied. The military judge and appellant then had the following colloquy:
MJ: You were telling me that these other two individuals approached you and also started hitting you, is that right?
ACC: Yes, Your Honor.
MJ: And you were waving the knife at all three of the other people?
ACC: I was jabbing at all three of them, Your Honor.
MJ: Okay, so you were more than just waving, you are jabbing it at them?
*621 ACC: Yes, ma’am.
MJ: And then I guess you jabbed Sergeant Raimer, is that right?
ACC: Yes, Your Honor, and Specialist Lettsome also.
MJ: Okay, just go ahead and tell me again how the actual stabbings of both individuals occurred, just in your own words.
ACC: This occurred, Your Honor, when Sergeant Raimer and another guy came over while I was fighting with Specialist Lettsome, Your Honor. I pulled the poek-etknife out and started jabbing at all three of them.
MJ: Okay, now, I know your counsel have explained to you what self-defense is and the defense of accident. Do you think that either of those applied to you?
ACC: No, ma’am.
MJ: In other words were you in fear that they were going to kill you or seriously hurt you?
ACC: I was, Your Honor. [Emphasis added].
MJ: Okay, so you stabbed Sergeant Raimer first and was Specialist Lettsome stabbed then also?
ACC: Yes, Your Honor.
MJ: Okay, go ahead and tell me how he was stabbed.
ACC: It was like, one motion, Your Honor, it was all at the same time.
The military judge also discussed the factual predicate of the obstruction of justice offense with appellant:
MJ: Now, did you depart the area?
ACC: Yes, Your Honor.
MJ: And you had the knife, you said, once again with you?
ACC: Yes, Your Honor.
MJ: What did you do with the knife?
ACC: On my way back up towards the barracks I closed it and I tossed it out the window of my car.
MJ: Why did you do that?
ACC: Because I knew that I had just used the knife and I had just stab [sic] someone and I knew if the police got involved, it might be used against me.
MJ: As evidence?
ACC: Yes, Your Honor.
MJ: So you were trying to dispose of the evidence?
ACC: Yes, Your Honor.
At the end of the providence inquiry, the military judge and appellant had the following exchange:
MJ: I just want to make sure before I conclude the providence inquiry that you are absolutely convinced in your own mind that you didn’t have legal justification or excuse to stab either Sergeant Raimer or Specialist Lettsome. Now, do you agree with me that you had no lawful justification or excuse?
ACC: Yes, Your Honor.
MJ: I know you’ve talked about this law with your counsel, right?
ACC: Yes, Your Honor.
MJ: It’s a difficult issue, but you are convinced in your own mind that you did wrong that night?
ACC: Yes, Your Honor.
The military judge subsequently accepted appellant’s plea and found him guilty of all specifications.
Appellant provided sworn testimony during the defense sentencing ease. He said that he wanted to apologize for the incident because “it could have been avoided” and he was “a little bit excessive” when he used the knife. He said, “I never had to pull that knife out.” During cross-examination, he explained that he put the knife in his pocket in case one of the men “pull[ed] a weapon.” Appellant testified, “I was engaged in a fistfight, but I was also outnumbered so to even the odds I pulled my knife out.”
LAW
A providence inquiry into a guilty plea must establish that the accused believes and admits that he is guilty of the offense and that the factual circumstances admitted by the accused objectively support the guilty plea. United States v. Garcia, 44 M.J. 496, 497-98 (C.A.A.F.1996). We review a military judge’s acceptance of a guilty plea for an abuse of discretion. United States v. Eberle, *622 44 M.J. 374, 375 (C.A.A.F.1996). We will not overturn a military judge’s acceptance of a guilty plea unless the record of trial shows a substantial basis in law and fact for questioning the guilty plea. United States v. Jordan, 57 M.J. 236, 238 (C.A.A.F.2002) (citing United States v. Prater, 32 M.J. 433, 436 (C.M.A.1991)).
“If an accused ... after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently ... a plea of not guilty shall be entered in the record____” UCMJ art. 45(a), 10 U.S.C. § 845(a). Our superior court has made clear that “[a military judge’s responsibility under Article 45, UCMJ,] includes the duty to explain to a military accused possible defenses that might be raised as a result of his guilty-plea responses.” United States v. Smith, 44 M.J. 387, 392 (C.A.A.F.1996); see United States v. Jem-mings, 1 M.J. 414, 418 (C.M.A.1976); Rule for Courts-Martial [hereinafter R.C.M.] 910(e) discussion. When such an inconsistency arises, the military judge must “identify the particular inconsistency at issue and explain its legal significance to the accused, who must then either retract, disclaim, or explain the inconsistent matter. The military judge need not drag appellant across the providence finish line and the guilty plea must be rejected unless the inconsistent matter is resolved.” United States v. Rokey, 62 M.J. 516, 518 (Army Ct.Crim.App.2005) (internal quotations and citations omitted).
DISCUSSION

Aggravated Assault

The facts admitted by appellant during the providence inquiry raised two issues concerning the defense of self-defense and the defense of accident, neither of which were explained by the military judge on the record to appellant. The first issue concerns appellant’s right to use deadly force to defend himself. The second issue relates to appellant’s right to offer more force than he could lawfully use, in conjunction with the defense of accident.

Right to Use Deadly Force

A person has the right to use deadly force to defend himself under certain circumstances. We have previously summarized the law in this area by stating:
This special defense is available in homicides and in assault cases involving deadly force when (1) the accused reasonably apprehends that death or grievous bodily harm is about to be wrongfully inflicted upon the accused and (2) he believes that the deadly force used is necessary for protection against the death or grievous bodily harm. Factors going to the reasonableness of an individual’s fear of imminent death or grievous bodily injury include the ability to withdraw or seek help or warn off the aggressors. The defense is not available if the accused is the aggressor or engaged in mutual combat. Nevertheless, an aggressor may in the course of events be entitled to use self-defense if an opposing party or parties escalate the level of conflict.
United States v. Bransford, 44 M.J. 736, 738 (Army Ct.Crim.App.1996) (internal citations omitted). The facts admitted by appellant during the providence inquiry raised this defense.
Initially, we conclude that appellant engaged in mutual combat with SGT Raimer when he voluntarily got out of the car and began to fight. While appellant was in the status of a mutual combatant, the defense of self-defense was not available to him. See id. However, during cross-examination on sentencing, appellant testified that after his initial altercation with SGT Raimer had ended, he started walking to his ear.[3] At this point, appellant had apparently withdrawn from the conflict and regained his right to self-defense. R.C.M. 916(e)(4).
Appellant stated that he was subsequently confronted and punched by SPC Lettsome. This led to a second fight, this time between appellant and SPC Lettsome. While the fight remained between two people using only their fists, there is nothing to indicate that appellant had any reason to fear that he *623 was about to suffer death or grievous bodily harm. Consequently, appellant had no right to resort to the use of deadly force. See R.C.M. 916(e)(1).
However, when two other people joined forces with SPC Lettsome and began to hit appellant, the nature of the conflict changed. Even if appellant was previously engaged in mutual combat, the escalation of the fight by the addition of two more combatants provided appellant with the right to defend himself against the increased threat. See Bransford, 44 M.J. at 738; United States v. Henry, 40 C.M.R. 818, 821, 1969 WL 6204 (A.B.R.1969). Appellant told the military judge that at this point he feared that he was about to suffer death or serious injury.[4] The question then became whether his asserted fear was reasonable. R.C.M. 916(e)(1)(A).
Looking at the entire providence inquiry, we cannot conclude that appellant’s fear was unreasonable as a matter of law, based on the facts as he described them. While “[generally speaking, a person is not entitled to use a dangerous weapon in self-defense where the attacking party is unarmed and commits a battery by means of his fist,”[5] it is possible for an attack by an unarmed assailant to create a reasonable fear of death or grievous bodily harm. Bransford, 44 M.J. at 738; United States v. Bradford, 29 M.J. 829, 832-33 (A.C.M.R.1989). In this case, appellant was facing not one, but three attackers, all of whom, according to appellant, were hitting him. This situation could have created a reasonable fear of death or grievous bodily injury on appellant’s part. See id.
In determining the “reasonableness” of such a fear, “objective indicators such as height, weight, and general build of the parties and the possibility of a safe retreat by the accused should be considered.” Bradford, 29 M.J. at 832-33. Unfortunately, the military judge never inquired into any of these factors. Neither the providence inquiry nor the stipulation of fact describes the size or any other characteristics of the individuals involved. According to the stipulation of fact, appellant “could have run away,” but this is not sufficient to establish he could have safely retreated. If he had run, his assailants could have pursued him. While the stipulation of fact states that “the accused could not reasonably expect that death or grievous bodily harm was about to be inflicted upon him,”[6] we do not find that this statement resolves the issue of self-defense raised during the providence inquiry, particularly where the military judge did not explicitly explain or discuss the issue with appellant on the record.

The Right to Offer Deadly Force and Accident

Even if appellant did not reasonably fear that he was about to suffer death or grievous bodily harm, he may have had a right to offer to use deadly force to deter the three people who were punching him. A person may lawfully defend himself by offering, but not actually using, such deadly force, if he reasonably believes that an attacker is about to inflict any bodily harm.[7] R.C.M. 916(e)(2). Thus, an accused is permitted to create an apprehension in his attacker that, if the assault does not stop, the accused would follow through with his offer and, in fact, use deadly force. United States v. Johnson, 25 C.M.R. 554, 555, 1958 WL 3218 (A.B.R.1958). He cannot, however, actually attempt to inflict harm. R.C.M. 916(e)(2).
This rule alone could not have provided appellant with a defense because his use *624 of force went beyond an offer and actually caused injury. However, if a lawful offer of such force results in an unintentional injury to the victim, the defense of accident may apply in conjunction with self-defense. R.C.M. 916(e)(2) discussion. Accident is a defense when “[a] death, injury, or other event ... occurs as the unintentional and unexpected result of doing a lawful act in a lawful manner.” R.C.M. 916(f). There are three elements to this defense. First, the act of the accused which was the proximate cause of the charged injury must have been lawful. United States v. Jenkins, 59 M.J. 893, 899 (Army Ct.Crim.App.2004). Second, the act which caused the injury “must have been performed in a lawful manner ... with due care and without simple negligence.”[8] Id. (internal quotations omitted). Finally, the injury must have been unintentional. Id. (internal quotations omitted).
As we stated above, appellant told the military judge that he was walking to his car when SPC Lettsome, and later SGT Raimer and another individual, began punching him. According to his statement in the providence inquiry, appellant brandished the knife initially because he was “out numbered” and wanted “to get them off of [him].” At this point, based on his statements, he would have had the right to offer deadly force to deter his attackers from continuing to punch him. See R.C.M. 916(e)(2). Thus, appellant’s act of brandishing the knife would have been lawful and raised the first element of the defense of accident.
Regarding the third element of the defense, appellant said that the stabbings were “accidental” rather than on purpose. Appellant was unsure as to how the stabbings actually occurred, saying that he “assumed” that he stabbed SGT Raimer because SGT Raimer fell to the ground and said that he had been stabbed. Apparently, neither appellant nor SPC Lettsome knew immediately that SPC Lettsome had been stabbed. The stipulation of fact indicates that SPC Lett-some only realized that he had been cut when he was in the car and his wife saw blood on his shirt. All of this supports the idea that the actual stabbings of SGT Raimer and SPC Lettsome were unintentional and raised the third element of the defense of accident.
The key issue then was whether appellant’s brandishing of the knife was carried out in a lawful manner. Appellant was entitled to use the knife as a deterrent to hold his assailants “at bay,” as long as he did not use it in an “attempt to take life or inflict grievous bodily harm.” See United States v. Acosta-Vargas, 13 U.S.C.M.A. 388, 32 C.M.R. 388, 1962 WL 4507 (1962) (citing law officer’s instructions on this principle approvingly). The military judge did not explain this concept to appellant. Appellant described what he did with the knife as “thrusting motions,” “stabbing,” and “jabbing.” The stipulation of fact describes his actions as “small jabbing motions.” While appellant’s actions with the knife could very well have constituted an act of aggression which exceeded his right to self-defense, his actions also might have been necessary to deter his attackers.
If the stabbings occurred unintentionally as a result of appellant’s lawful offer to use deadly force, it is possible that the defense of accident would have applied. However, if appellant was entitled to offer deadly force, but did so negligently with the knife, he would not be entitled to the defense. R.C.M. 916(f) discussion. Regrettably, however, the military judge never discussed the concept of negligence with appellant on the record. She failed to define the term for him, explain why it was relevant, or elicit his views on the question. Therefore, the providence inquiry is insufficient to resolve this issue.

Responsibility of the Military Judge

The military judge abdicated her responsibility of ensuring an adequate guilty plea record. Rather than explaining these defenses and all of the interrelated concepts described above to appellant, the military judge granted a recess to allow the trial defense counsel to do so. When the court returned, the military judge indicated that she had discussed the issues with counsel and *625 appellant. However, because these discussions were not made part of the record, we do not know the scope or accuracy of any explanation provided to appellant. The record only reflects that counsel and appellant agreed that the defenses did not apply.
In fact, we question the completeness of any explanation appellant received because the military judge said that she told counsel to read United States v. Lett, 9 M.J. 602 (A.F.C.M.R.1980), to “ensure there was no remaining issue of self-defense in this case.” The issue in Lett was whether the “accused’s testimony that he used a switch-blade knife only as a passive deterrent to the fistic assault and that victim’s death resulted from the victim grabbing his arms and struggling for the knife raised the issue of accident as a defense and required a specific instruction.” Lett, 9 M.J. at 603. The Air Force court held that:
the accused’s actions were unlawful and were done without reasonable care and due regal’d for the lives of others. Carrying a concealed switch-blade knife with a five inch blade into a crowded club with the express purpose of using it as a weapon is conduct prejudicial to good order and discipline of the armed forces.... We recognize an accused’s right to show a weapon as a passive deterrent in order to ward off an assailant even in a fistic assault. However, when as here, the weapon was drawn by the accused in such close proximity to the assailant that the assailant would reasonably surmise it was to be immediately used against him, it cannot be considered as a passive deterrent, but a resort to inordinate force.
Id, at 605.
While Lett is instructive, it does not resolve the deficiencies in the providence inquiry in the present case for several reasons. First, the question of whether appellant’s actions were done “without reasonable care and due regard for the lives of others” was never discussed with appellant. Appellant may well have acted unreasonably, but the record does not establish that appellant even understood this concept or its significance, let alone that he was willing to admit that fact. Moreover, the opinion in Lett focused only on the issue of the right to offer deadly force to deter an assault. It did not address a situation where the accused was entitled to actually use deadly force to defend himself, as may have been the case in appellant’s situation.
The military judge eventually asked appellant if he agreed that he had no lawful justification or excuse for the stabbings and appellant agreed. However, absent a complete explanation of the defenses of self-defense and accident, his acquiescence had little meaning. As our superior court said over thirty years ago:
[Wjhen the military judge believes the accused has offered testimony which operates to set up matters inconsistent with his plea, ... the judge has an obligation to discover from the accused his attitude regarding the potential defense. The same reasoning which gave rise to the Care rationale renders inadequate the mere asking for defense counsel’s conclusion as to [the applicability of the defense]____When the appellant’s testimony reasonably raise[s] the question of a defense ..., it [is] incumbent upon the military judge to make a more searching inquiry to determine the accused’s position on the apparent inconsistency with his plea of guilty. A prior determination by the defense counsel that ‘there is a factual basis for the plea ... will not relieve the military trial judge ... of his responsibility to do so on the record.’
United States v. Timmins, 21 U.S.C.M.A. 475, 45 C.M.R. 249, 1972 WL 14168 (1972) (quoting United States v. Care, 18 U.S.C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969)) (emphasis added). Thus, it is axiomatic in the military justice system that a military judge must ensure that an accused who pleads guilty provide such facts on the record to ensure that he is knowingly and voluntarily entering such a plea and that the accused actually is guilty. This requirement was not met in this case and, as a result, we find that there is a substantial basis in law and fact for questioning the guilty plea to the specifications of Charge I. See United States v. Jordan, 57 M.J. 236, 238 (C.A.A.F. *626 2002) (citing United States v. Prater, 32 M.J. 433, 436 (C.M.A.1991)).

Obstruction of Justice

Appellant pled guilty to the offense of obstruction of justice, in violation of Article 134, UCMJ, for disposing of the knife used to stab SGT Raimer and SPC Lettsome. The elements of that offense are:
(1) That the accused wrongfully did a certain act;
(2) That the accused did so in the case of a certain person against whom the accused had reason to believe there were or would be criminal proceedings pending;
(3) That the act was done with the intent to influence, impede, or otherwise obstruct the due administration of justice; and
(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.
MCM, Part IV, para. 96b. We specified the issue of whether the providence inquiry was sufficient to establish that appellant’s act was “wrongfully” done where appellant was apparently in lawful possession of the knife.
Ordinarily, a property owner can dispose of property in whatever manner he wishes. However, as we recently stated in United States v. Davis, 62 M.J. 691, 694 (Army Ct.Crim.App.2006), it is “possible for an otherwise lawful act to become wrongful [and constitute obstruction of justice] if it is performed for an improper purpose.” In the context of disposal of legally owned property, we held in Davis that “[w]hen otherwise lawful disposal of property is accomplished primarily because it is evidence of a crime, the act negatively affects society and crosses the line from legal to wrongful activity.” Id. (citing United States v. Reeves, 61 M.J. 108 (C.A.A.F.2005)).
In this case, appellant voluntarily pled guilty and admitted that his conduct met all of the elements of obstruction of justice. His statements during the providence inquiry establish that he disposed of the knife solely because he was trying to dispose of evidence that could be used against him. This admission was sufficient to establish that appellant’s act of throwing the knife out of the window of his car was wrongfully done. As such, we find that appellant’s plea of guilty to obstruction of justice was provident.
CONCLUSION
To properly reassess the sentence for the remaining conviction for obstruction of justice, we must “assure that the sentence is no greater than that which would have been imposed if the prejudicial error had not been committed.” United States v. Sales, 22 M.J. 305, 308 (C.M.A.1986) (quoting United States v. Suzuki 20 M.J. 248, 249 (C.M.A.1985)). This means that we must determine, in the absence of the two convictions of aggravated assault, that appellant would have received a sentence of at least a certain severity solely for the obstruction of justice conviction. See id. Under the facts of this case, we “cannot reliably determine what sentence would have been imposed at the trial level” solely for the remaining conviction. See id. at 307.
Accordingly, the findings of guilty of Charge I and its Specifications are set aside. The remaining findings of guilty are affirmed. The sentence is set aside. A rehearing on Charge I and its Specifications is authorized, as is a rehearing on the sentence, or both. If the convening authority determines that a rehearing is impracticable, he may dismiss Charge I and its Specifications and either order a sentence rehearing on the Additional Charge and its Specification or approve a sentence of no punishment. After the convening authority has taken his action, the record will be resubmitted to this court for review consistent with our responsibilities under Article 66, UCMJ.
Judge JOHNSON and Judge KIRBY concur.

 Senior Judge Merck took final action in this case prior to his retirement.

. Appellant was charged with two specifications of aggravated assault with the intentional infliction of grievous bodily harm. He pled and was found guilty of the lesser included offense of assault with a dangerous weapon, a means likely to cause grievous bodily harm.

. The Specification of the Additional Charge alleges, "In that Specialist (E4) Colin E. Richards, United States Army, did at or near Ft. Hood, Texas, on or about 24 August 2003, wrongfully endeavor to impede an investigation by wrongfully disposing of evidence, to wit: throwing a knife out of his car window.”

. See R.C.M. 910(h)(2) (requiring the military judge to reopen the providence inquiry if, after findings, an accused raises matters inconsistent with plea).

. Inexplicably, the military judge never addressed this statement or discussed with appellant the possibility that he may have had the right to actually use deadly force if he had a reasonable fear of death or grievous bodily harm.

. United States v. Martinez, 40 M.J. 426, 430 (C.M.A.1994).

. The stipulation of fact describes the individual fights appellant had with SGT Raimer and with SPC Lettsome and provides that, during each of these incidents, appellant “could not reasonably expect that death or grievous bodily harm was about to be inflicted on him.” However, the stipulation does not address the reasonableness of appellant's stated fear during the part of the incident when appellant alleges three people were hitting him.

. Like the aspect of self-defense involving the actual use of deadly force, described above, this defense is not available if appellant was the aggressor or was engaged in mutual combat. R.C.M. 916(e)(4).

. Negligence is "the absence of due care [that] ... a reasonably careful person would have exercised under the same or similar circumstances.” Manual for Courts-Martial, United States (2002 ed.) [hereinafter MCM], Part IV, para. 85c(2).